

## OFFICE OF THE DISTRICT ATTORNEY, Bronx County

---

**ROBERT T. JOHNSON**  198 East 161st Street  (718) 838-7103
*District Attorney*  Bronx, New York  10451

**Bari L. Kamlet**
**Email:** kamletb@bronxda.nyc.gov
*Assistant District Attorney*
*Appeals Bureau*

February 13, 2014

Hon. Debra Freeman
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

                                    Re:  Devon Millington v. William Lee
                                         11 Civ. 00499 (PAC)(DF)

Your Honor:

    Petitioner has failed to meet his burden in showing that he received ineffective assistance of trial counsel. The governing Supreme Court precedent is, of course, Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, 466 U.S. 668, ineffective assistance of counsel is evaluated on a case-by-case basis and can only be established if petitioner satisfies both prongs of a two-prong test. First, petitioner must show "that counsel's performance fell below an objective standard of reasonableness" given the prevailing professional norms. Id. at 688. In evaluating counsel's performance:

> [j]udicial scrutiny . . . must be highly deferential. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance

Id. at 689-90 (quotation marks and citations omitted).

In addition, it must be shown that petitioner was prejudiced by counsel's deficiency. Prejudice results where there is a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Id. at 694. "Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown of the adversary process that renders the result unreliable." Id. at 687. In the ordinary case, a defendant raising a claim of ineffective assistance of counsel bears the heavy burden of establishing that his "counsel's representation fell below an objective standard of reasonableness" and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Bellemy v. Cogdell, 974 F.2d 302, 306 quoting Strickland, 466 U.S. at 694; see Kimmelman v. Morrison, 477 U.S. 365 ("As is obvious, Strickland's standard, although by no means insurmountable, is highly demanding"…and "only those habeas petitioners who can prove under Strickland that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ…").

Viewed under the demanding standards of Strickland and its progeny, the evidence adduced at the hearing fails to substantiate petitioner's claims. Although the hearing has revealed that an offer was extended to petitioner at some point (although it has not been determined specifically when, and what the final offer was), petitioner has failed to establish that

2

counsel misadvised him as to his maximum sentencing exposure or that petitioner would have accepted the offer if properly advised. Thus, the petition must be denied.

Preliminarily, many questions still remain surrounding the plea offer and for that reason the petition should be denied. While there are pretrial minutes and notes recorded by the trial judge which support the notion that an offer was extended by the People at some point before trial, it has not been established when exactly the offer was extended, what the specific terms of offer were, and whether or not it was withdrawn by the People immediately before trial. Additionally, it should be noted that co-defendant Michael Suarez ultimately pled guilty pursuant to a cooperation agreement on January 2, 2002, and that the People cannot say with certainty, how Suarez's guilty plea factored in to the offer that was at some point extended to petitioner.

With respect to what offer was extended, while the trial judge's undated notes which, based upon his practice, were likely recorded at some point following the verdict and prior to sentencing, indicate that the People were offering petitioner twenty years to life, his notes also indicate that the People were considering offering defendant eighteen years to life or nineteen years to life, but that defendant wanted fifteen years to life. See Court Exhibit 1: stipulation. In conflict with Judge Straus's notes are the testimonies of defendant and his brother, where they stated that they believed Mr. Iannuzzi was trying to obtain a determinate sentence- defendant testified that it was specifically a "flat" sentence of fifteen years (D.Millington: H. 14, 25-27, 31-32; E. Millington : H..51). Additionally, defendant stated the eighteen years to life was a definite offer (D.Millington: H.25) as opposed to Judge Straus's notes which indicate that eighteen years to life or nineteen years to life were only possible offers. Even if the court were to deem the trial judge's notes, and the pre-trial minutes sufficient evidence to establish that an offer was extended, petitioner's hearing testimony and the testimonies of his brother and father were so

3

incredible, internally inconsistent, and contradictory, that they cannot be deemed to have established that trial counsel misadvised petitioner on his maximum sentencing exposure or that petitioner would have accepted the offer if properly advised. Therefore, the petition must be denied.[1]

To start, petitioner, an interested witness who also received a number of disciplinary infractions while in prison, the most significant of which was a two to four year sentence for the felony of Possessing Prison Contraband (D.Millington: H. 18-20), delivered wholly incredible hearing testimony that deviated from statements made in his affidavit. In his affidavit, petitioner painted a picture of Mr. Iannuzzi as a defense attorney who never spoke with and barely met with him, and who knew nothing about his case. See Exhibit H of petitioner's CPL 440 motion. At the hearing, however, petitioner admitted that counsel asked him about his family, occupation, and about the incident, that he had a fairly decent trial strategy and, further, that he agreed for Mr. Iannuzzi to represent him on appeal because he knew the case better than anybody and that he put his faith in him (D.Millington: H.12, 15-16, 23, 28). Petitioner went so far as to say that he believed defense counsel would "probably redeem himself the second time around, you know, for the most part" (D.Millington: H.17). This equivocal and cavalier remark is representative of a man who schemes in order to escape consequences. It is simply impossible to believe that after realizing counsel misadvised him on his maximum sentencing exposure, and

---

[1] Petitioner has also not established that there was no record discussion pertaining to the potential sentence of life without parole, nor further discussions pertaining to plea negotiations. While this Court held that petitioner had not failed to develop the facts of his claim, certainly, the burden rests on petitioner to have obtained the multitude of pretrial minutes in order to determine whether there were any more discussions pertaining to an offer, or discussions pertaining to defendant's sentencing exposure. Without them, the possibility remains that petitioner was adequately informed of his maximum potential sentence, and petitioner cannot be found to have met his heavy burden of establishing that his "counsel's representation fell below an objective standard of reasonableness" and that "but for counsel's unprofessional errors, the result of the proceeding would have been different. Cogdell, 974 F.2d at 306 quoting Strickland; see also Kimmelman, 477 U.S. 365.

finding himself sentenced to life without parole, that petitioner would choose to keep Mr. Iannuzzi on as retained counsel. When asked why he did not say anything to the trial judge after discovering his attorney's alleged grave error, petitioner simply stated that he did not know why he did not speak up (D.Millington:H.17). This is a plainly insufficient answer and undercuts petitioner's claim that he was misadvised. Petitioner also admitted to lying on multiple occasions below—indeed, the fact that petitioner stated that he was given no warning that he was going to testify, but was able to make up, spur of the moment, the story about getting the drugs near NYU, is simply incredible (D.Millington: H. 23).

Petitioner's testimony also has not established that he would have even taken the offers had he known he was facing life without parole. See Lafler v. Cooper, 132 S.Ct. 1376 (2012), (defendant has to show prejudice in that that he would have taken the offer). Assuming arguendo, that counsel did misadvise petitioner and inform him that he was facing a maximum sentence of twenty five years to life, and that eighteen years to life was an offer that was definitely extended, petitioner testified that he felt that eighteen years to life was a significant difference as compared to twenty-five years to life (D.Millington: H.26). If this is so, however, then it would make sense for defendant to have been interested in taking the plea even then, and the fact that he did not suggests that he was not interested in an offer at all, but rather an acquittal.

Not only was petitioner's testimony incredible, but so was his father's and brother's. In stark contrast to his affidavit, in which he stated that petitioner told him that he could get eighteen years to life, but that Mr. Iannuzzi never mentioned anything to him about an offer, petitioner's father testified that he and his son Errol were in Mr. Iannuzzi's office when Mr. Iannuzzi said that the People were making an eighteen years to life offer, but did not believe that

5

petitioner should take the offer (R.Millington: H.37). Moreover, petitioner's father is a biased witness, who expressed his love for his son, and stated that he would do anything to help him (R.Millington: H.38). He also indicated that he had spent a lot of money on Mr. Iannuzzi's services, was quite upset with the results of the trial, and blamed him for the fact that defendant lied at trial (R.Millington: H.40). Certainly, Mr. Millington's interest in his son's well-being and apparent animosity toward Mr. Iannuzzi undermines his credibility. Most significant is that when confronted with the fact that his testimony directly contradicted his affidavit, Mr. Millington stated that shortly after signing the affidavit he spoke at greater length with Ms. Hirsch, and was then suddenly able to recall that Mr. Iannuzzi told him about the eighteen years to life offer, but that he chose not to do anything to correct his alleged inaccurate affidavit (R.Millington: H.42). This most incredible and biased witness does not, therefore, support petitioner's claim.

Petitioner's claim is further refuted by his brother, Errol Millington, who clearly stated that Mr. Iannuzzi informed him and Roy Millington that petitioner faced life in prison but that he could get a plea of eighteen years to life (E.Millington: H.47, 49). It should also not go unnoticed that Errol Millington was the only one to testify that Mr. Iannuzzi characterized any sentence that "had life at the end of it" as a life sentence. Neither Roy Millington, nor petitioner ever indicated that Mr. Iannuzzi gave such an explanation. What is more likely is that Errol Millington misinterpreted Mr. Iannuzzi. Although Mr. Iannuzzi stated that he would not have discouraged petitioner from taking an offer, perhaps he thought defendant would never realistically have been sentenced to life without parole if convicted after trial—such a view is not equivalent to conveying that life without parole was legally impermissible. See Lafler, 132 S.Ct. at 1391 (erroneous strategic prediction about the outcome of trial is not necessarily deficient

performance). Errol Millington also testified that he and Roy Millington met with Mr. Iannuzzi on two occasions prior to trial, whereas in his affidavit he stated that he was present for one meeting. Such inconsistency (both among the testimonies of the Millingtons and between their live testimonies and their affidavits) typifies the quality of the evidence presented by petitioner at the hearing.

Mr. Iannuzzi's testimony, on the other hand, revealed that he has authored many books related to criminal law, had tried a first degree murder case prior to petitioner's (and over two hundred and fifty murder cases by the instant hearing), and by the time he represented petitioner was a seasoned criminal defense attorney who had tried hundreds of criminal cases. He also testified that he has never been found ineffective and that no disciplinary complaints lodged against him by disgruntled clients have ever resulted in an outcome adverse to him (Iannuzzi: H.57-59).

Mr. Iannuzzi also testified that at the time he was representing petitioner, his practice was to convey extended offers to his clients, help them evaluate the offer, and give his opinion of it, and is sure that he would have carried that practice out with defendant (Iannuzzi: H.62-63). He further testified that at the time he was representing petitioner it was his practice to inform his clients of their maximum sentencing exposure, and what his view of the case was in order for them to make an objective determination for themselves, but that he does not have a specific recollection of conversations he and defendant had on this topic (Iannuzzi: H.63-64). Importantly, counsel refuted petitioner's claim that he discouraged him from taking a plea, and indicated that he would not have done so (Iannuzzi: H.64). And while counsel could not specifically recall at the hearing—three years after he submitted a sworn affidavit on the topic— when he became aware that petitioner was facing life without parole, counsel unequivocally

7

indicated in his affidavit that he was fully aware at the time that he represented petitioner that a prosecution for Murder in the First Degree included a potential sentence of life without parole if convicted after trial. See People's Opposition to petition, Exhibit 12.

      Based upon the balance of his testimony, his prior statement made in his affidavit, as well as his level of experience, and admitted familiarity with the 1995 change in the First Degree Murder statute (Iannuzzi: H.59-60), the fact that he testified that he would have told defendant he faced a maximum of twenty five years to life even though he was being charged with Murder in the First Degree (Iannuzzi: H.64) illustrates why "[m]ea culpa statements made by counsel in state motion papers and orally, or by letter, affidavit or testimony . . . cannot be taken at face value." Barclay v. Spitzer, 371 F.Supp.2d 273, 283 (EDNY 2005). Certainly, Mr. Iannuzzi's reference, at sentencing, to the murder statute being "revised" (Iannuzzi: H.62) further supports the notion that he was aware of the 1995 change in the law. Given Mr. Iannuzzi's continued vehement expression that petitioner's conviction and sentence was a terrible miscarriage of justice (Iannuzzi: H.62; D.Millington: H.16), the only plausible explanation for this testimony is that Mr. Iannuzzi is a lawyer more devoted to his client than to his own reputation. See Barclay, 371 F. Supp.2d 273. It simply does not make sense that he would do such a thing considering his level of experience and admitted understanding of the law surrounding Murder in the First Degree. Having tried a first degree murder case in 1964-1965, counsel indicated that he was aware of the change in the first degree murder statute in 1995 and that he received capital murder training in 1995 after New York reinstituted the death penalty (Iannuzzi: H.57-60). Counsel quite clearly testified that at the time the law changed, life without parole and the death penalty were put into effect (Iannuzzi: H.60). This statement also cannot be relied upon to overcome a presumption of effectiveness when Mr. Iannuzzi has repeatedly asserted both in his affidavit and

8

at the hearing that he cannot recall specific conversations he had pertaining to petitioner's case (Iannuzzi: H.63-69). Indeed, as <u>Barclay</u> makes clear, it is not unheard of for a trial attorney to prioritize his client's interests before his own during post-conviction proceedings. It is also must be recognized that after testifying that he would have told petitioner he was facing a maximum of twenty-five years to life, Mr. Iannuzzi admitted that it would be hard for him to have told petitioner that he was facing twenty-five years to life if he was facing life without parole unless it was something that he did not discuss with petitioner until later in the case, after the verdict. Mr, Iannuzzi explicitly articulated that at the time he represented petitioner, it was his practice to fully inform his clients as to their maximum sentencing exposure (Iannuzzi: H.69). At best, Mr, Iannuzzi's inability to specifically recall petitioner's case in order to be able to say that he carried out the practice caused him to second guess himself, and at worst, his failure to recollect whether he carried out the practice is representative of the type of defense attorney the court in <u>Barclay</u> warns about. In either case, as mentioned, based on Mr. Iannuzzi's testimony as a whole as well as his prior affidavit, it strains credulity to believe that he failed to properly advise petitioner that he faced life without parole. That Mr. Iannuzzi remains willing to "fall on his sword" for petitioner indicates that he is the type of zealous advocate whose decisions should not be second-guessed at this stage of the proceedings.

Therefore, the petition must be denied.[2]

Respectfully submitted,

*/s/ Bari Kamlet*

Bari L. Kamlet
Assistant District Attorney

cc:  Andrea G. Hirsch, Esq.
     111 Broadway, Suite 1305
     New York, New York 10006

---

[2] The People would also like to note that if this Court finds that petitioner has met his burden in establishing that he received ineffective assistance of trial counsel, the appropriate remedy would be to order the People to re-offer the plea previously extended. While the People opposed the remedy of specific performance in its original opposition to petitioner's habeas corpus petition, the opposition was submitted prior to the Supreme Court's decision in Lafler, 132 S.Ct. 1376, which makes clear that the appropriate remedy here is to direct that the plea offer be re-extended. Then, if petitioner accepts the offer, the state court may exercise its discretion in determining whether to vacate the trial conviction and resentence petitioner according to the terms of the plea. Lafler, 132 S. Ct. at 1391.